UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
ROBERT E. POLES,

                        Plaintiff,

            - against -

BROOKLYN COMMUNITY HOUSING AND
SERVICES, JEFF NEMETSKY,
CHRISTOPHER HALLIGAN, ADAM
LEITMAN BAILEY, P.C.,

                        Defendants.
----------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

11 Civ. 4796 (BMC)

**COGAN**, District Judge.

This case is before me on defendants' motion to dismiss the amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. The amended complaint purports to state federal claims for racial discrimination under 42 U.S.C. § 1981 and 42 U.S.C. § 1985. These claims are dismissed for failure meet the requirements of Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949-50 (2009). In addition, since the Court has previously allowed plaintiff to amend his initial complaint when it failed to state a claim, the Court will not grant leave to amend again. Having dismissed the federal claims, the Court declines to retain jurisdiction over the state law claims.

## BACKGROUND

Plaintiff, who is proceeding *pro se*, is an African American male "long diagnosed as psychiatrically disabled through the psychosis of Schizoaffective Disorder." This is the third action plaintiff has brought before this Court springing from attempts by Brooklyn Community Housing and Services ("BCHS") to remove plaintiff from BCHS housing.

BCHS is a non-profit organization that provides assisted living for adults with psychiatric histories. Plaintiff's initial complaint, which is largely identical to the complaints he filed in his prior actions in this Court, alleges that defendants BCHS and Jeff Nemetsky (a BCHS executive director) refused to renew plaintiff's lease on the basis of his race and in retaliation for his participation in the "BCHS Oak Hall Residents' Council/Tenants Association." In the past, BCHS engaged a non-party law firm to prosecute an eviction proceeding, for non-payment of rent, against plaintiff. Defendant Christopher Halligan worked as an attorney on this eviction, which was ultimately unsuccessful. The fourth defendant, Adam Leitman Bailey, P.C. ("Adam Leitman"), is not alleged to have played any role in this eviction proceeding and is defined in the complaint only as Halligan's "last known employment address."

In plaintiff's initial complaint, the only fact supporting his conclusion of racial animosity was that Halligan made "personal remarks concerning the race of Plaintiff." Plaintiff was given leave to replead his complaint on October 16, 2011, in order to provide specific facts in support of his allegation of racial animosity. His amended complaint, which was largely identical to the first complaint, explained that Halligan addressed plaintiff as "nigger" during a pre-trial conference in the prior eviction proceeding.

## DISCUSSION

A complaint must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007); accord Iqbal, 129 S.Ct. at 1949-50. The Court is mindful that "[a] document filed *pro se* is to be liberally construed, and a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94, 127 S.Ct. 2197 (2007) (internal quotation marks and citation omitted). If a liberal reading of the

complaint "gives any indication that a valid claim might be stated," this Court must grant leave to amend the complaint. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000).

### A. Defendant Adam Leitman Bailey, P.C.

As noted by defendants in their motion to dismiss, the complaint does not allege that Adam Leitman played any role in the prior eviction proceeding or in BCHS's decision not to renew plaintiff's lease. Instead, plaintiff alleges that Halligan's offensive remark may be attributed to his new employer "[t]hrough the elements of respondeat superior and vicarious liability." But Halligan was not employed by Adam Leitman at the time he made the offensive remark. His remark therefore cannot be attributed to the firm. Since Poles alleges no other facts connecting Adam Leitman to this litigation in any way, this defendant must be dismissed.

### B. 42 U.S.C. § 1985 Claims

Plaintiff alleges that the defendants conspired with each other to deny him equal protection of New York state real property laws, in violation of his civil rights under 42 U.S.C. § 1985(3). This statute provides a remedy to redress conspiracy by two or more persons "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws." To state a claim for conspiracy under § 1985(3), a plaintiff must make factual allegations showing the existence of an underlying constitutional violation and a meeting of the minds to achieve the unlawful result. See, e.g., Okoh v. Sullivan, No. 10-CV-2547, 2011 WL 672420, at *4 (S.D.N.Y. Feb. 24, 2011).

To state a claim for racial discrimination under § 1985(3), plaintiff must plead facts showing "that some racial . . . invidiously discriminatory animus lay behind the conspirators' action." Bray v. Alexandria Women's Health Clinic, 506 U.S. 263, 268, 113 S.Ct. 753 (1993) (internal quotation marks omitted). This requires "specific factual allegations" regarding both

3

the existence of the conspiracy and the discriminatory intent of the conspirators. Vertical Broad., Inc. v. Town of Southampton, 84 F. Supp. 2d 379, 389-90 (E.D.N.Y. 2000).

Plaintiff claims that BCHS refused to renew plaintiff's lease because he is black. Aside from noting his employment at BCHS, plaintiff does not allege any facts to demonstrate that Nemetsky played any role in the decision not to renew plaintiff's lease. Likewise, the complaint alleges no facts to suggest that Halligan played any role in this decision. The complaint alleges only that Halligan was retained by BCHS, years ago, in connection with a prior eviction proceeding. There is no indication that Halligan continued to represent BCHS after the eviction proceeding in any capacity. Plaintiff therefore fails to state a claim under § 1985(3), as he has alleged no facts which tend to demonstrate that any of the defendants conspired in the decision not to renew his lease. See Thomas v. Roach, 165 F.3d 137, 147 (2d Cir. 1999) (To state a claim under § 1985(3), plaintiff "must allege, with at least some degree of particularity, overt acts which defendants engaged in which were reasonably related to the promotion of the claimed conspiracy.").

Moreover, the only allegation of racial animosity in plaintiff's complaint is the racial slur used by Halligan at a pre-trial conference during the prior eviction proceeding. The Court agrees with plaintiff's characterization of the word "nigger" – it bears clear racial connotations and is indeed, as plaintiff observes, "one of the most historically derogatory words in the history of this nation." However, as defendants note, the complaint gives no indication that Halligan's comment bore any connection to BCHS's subsequent decision not to renew plaintiff's lease. Plaintiff argues that he believes Halligan "has retained his racially based invidious animosity demonstrably increased by [plaintiff's] five years of federal and NYS attorney disciplinary litigation efforts." But it does not matter whether Halligan continues to harbor racist sentiments

4

toward plaintiff, since plaintiff has failed to allege any facts in support of his claim that these racist sentiments were the driving force behind BCHS's decision not to renew plaintiff's lease.

The complaint also fails to allege any facts showing that any other defendant heard – let alone ratified – Halligan's isolated comment. Crucially, a claim under § 1985(3) requires a plaintiff to demonstrate that the goal of the conspiracy was to deprive the plaintiff of his constitutional rights. See Griffin v. Breckenridge, 403 U.S. 88, 102, 91 S. Ct. 1790 (1971). This requires plaintiff to demonstrate that the conspiracy itself was racially motivated. Halligan's isolated racial slur is therefore insufficient to plausibly suggest that the defendants engaged in a racially-motivated conspiracy. Plaintiff's § 1985(3) claims are therefore dismissed.

### C. 42 U.S.C. § 1981 Claims

To establish a claim under §1981 of the Civil Rights Act, a plaintiff must allege facts in support of the following elements: "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993). Section 1981 requires that a defendant's actions were both "intentionally and purposefully discriminatory" and that these discriminatory actions were motivated by plaintiff's race or ethnicity. Reyes v. Erickson, 238 F. Supp. 2d 632, 638 (S.D.N.Y. 2003).

Again, plaintiff has not asserted that there was any connection between Halligan's offensive comment and BCHS's decision not to renew his lease. Courts have repeatedly found such allegations insufficient. "[N]aked assertions by plaintiffs that race was a motivating factor without a fact-specific allegation of a causal link between defendant's conduct and the plaintiff's

5

race are too conclusory." Id. at 638 (internal quotation marks omitted). Accordingly, plaintiff's claims pursuant to § 1981 must also be dismissed.

### D. Leave to Amend

Having previously allowed plaintiff leave to amend, the Court finds that further amendment would be futile. Plaintiff has stated all the facts that lead him to believe that he is the victim of racial discrimination, and those facts do not support such an inference except in plaintiff's mind. Under these circumstances, the Court is not required to give plaintiff further leave to amend. See O'Hara v. Weeks Marine, Inc., 294 F.3d 55, 69 (2d Cir. 2002).

### E. State Law Claims

In addition to his two federal claims, plaintiff brings multiple causes of action under New York state law. Having dismissed the federal claims, I have discretion to retain supplemental jurisdiction over the state claims under 28 U.S.C. § 1367(c)(3). According to the Second Circuit, a district court may exercise this discretion in order to further "fairness" or "judicial efficiency," or to resolve any "novel or unsettled issues of state law." Mauro v. S. New England Telecomms., Inc., 208 F.3d 384, 388 (2d Cir. 2000). However, when all claims that independently support federal jurisdiction have been dismissed, "the balance of factors . . . will [usually] point toward declining to exercise jurisdiction over the remaining state law claims." Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343, 350 n.7, 108 S. Ct. 614 (1988).

## CONCLUSION

Defendants' motion is granted. The federal claims are dismissed with prejudice and the state law claims are dismissed without prejudice. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this Order would not be taken in good faith and therefore *in*

6

*forma pauperis* status is denied for purpose of an appeal. Coppedge v. United States, 369 U.S. 438, 444-45, 82 S. Ct. 917 (1962).

U.S.D.J.

Dated: Brooklyn, New York
February 28, 2012